Yes, sir. Go ahead. Good morning. May it please the court, I'm Warren Bleeker from Louis Rocha Roth Gerber Christie for the Plaintiff and Appellant Merit Healthcare. And with me in the courtroom is Catherine Quigley, Counsel for Merit, and also representatives from Merit Healthcare, James and Yvonne Farha. I would like to reserve three minutes, please. So this is a trademark dispute. Our client, Merit Healthcare, claims it has trademark rights to the mark Merit for pharmaceutical and medical devices based on common law use stemming back from use from the 1970s. The opposing side, Merit Medical, has trademark registrations that issued after that date also covering medical devices. And so the issue before this court is whether or not there was a case or controversy that would have permitted Merit Healthcare to file a declaratory relief action for non-infringement. Obviously, you have some conflicting interests with respect to the patent office as to, you know, the pending applications that were rejected by the patent office, the trademark office. But that's not necessarily a dispute between Merit Healthcare and Merit Medical. So the dispute between Merit Healthcare and Merit Medical is that, I mean, the genesis of the dispute was the fact that the trademark applications were filed and they were being blocked based on the existing registration. So now you have two entities who are claiming similar rights to use Merit. And so we contacted Merit Healthcare, contacted Merit Medical to attempt to resolve the dispute, to work out a coexistence agreement. Because at the end of the day, it's Merit Healthcare's position that there's not infringement, that Merit Healthcare has priority of rights, but there's not a likelihood of confusion. So your view is that there isn't a problem, there isn't a conflict. And as I understand it, Merit Medical is not taking a position to the contrary. Well, that's the problem. Merit Medical is taking a position to the contrary. In what and attempted to work out a coexistence agreement. And that went nowhere. And there were comments made to the effect that there's not going to be a coexistence agreement. And then at that point, they began attempting to gather evidence that one would think would be the type of evidence you would look for to prove likelihood of confusion and or priority. And so... But they're just doing background research. I don't know that that necessarily suggests that there's, you know, an actual controversy of some immediacy that might warrant or justify supporting jurisdiction in this case. They're not obligated to enter into an agreement, are they? That's correct. They're not obligated. They're not obligated to do research to determine whether there's a necessity to enter into such an agreement, correct? You asked if there was... Is there any obligation on their part to do research to determine whether there is some reason to enter into such an agreement? I wouldn't say it's an obligation on their side one way or the other. I mean, that would be up to them how they want to deal with the issue. But those aren't the only facts that are before the court. So before the court is the issue as of the filing of the Third Amendment complaint, what were the facts and what were the allegations that would support a claim for case of controversy? As of... My understanding is the law about that. It's as of meaning taking into account what is in the Third Amendment complaint about what was true at the beginning of the case. In other words, we're still looking at the beginning of the case in terms of jurisdiction. But the court may also consider additional facts that have occurred since the filing of the original complaint. On what basis can we do that? That would be on the North Star case. In that case, for example, there was a question of whether or not there was standing at the original point because there wasn't an assignment that was granted. So when the original complaint was filed, the plaintiff hadn't executed the assignment that was necessary to have standing. That assignment was executed after the complaint was filed. But the court North Star said, well, we'll consider that and we'll consider that as a supplemental complaint. And so there is standing now and we're not going to put a form over... I mean, we're not going to force you to accept that as a supplemental pleading. I think your reading of North Star is right, but you would concede, wouldn't you, that it's a little bit odd that you could use things that happen during the course of the litigation itself to generate the controversy between the parties, right? Because it seems to me you're... Without the statement at the Rule 26-F conference that, I guess, the other side's saying that they will be suing you, I think this is an easy affirmance. I think that's the only piece of evidence, if you want to call it that, gives me pause at all. But you all generated that in the course of litigating this lawsuit. It just seems a little bit odd, even under North Star, to allow you to take advantage of that, to basically create the controversy that's now going to provide jurisdiction. Well, I guess the court has to consider the context of a trademark, declaratory relief trademark infringement action, where the plaintiff believes it has prior rights and there's not an infringement, but the other side won't agree to that. It's a much larger company and it's basically holding this implicit threat of litigation over the smaller company, which is preventing them from fully using what they believe their full rights are to use merit. And there's always the shadow of this big company that has not agreed that they don't infringe. They're a lot larger. They're a multimillion dollar company and they're standing out there. And they've done a number of things that suggest that they may be building a case for non-infringement. All the facts have to be viewed from the plaintiff's view, from the plaintiff's perspective. And so to the extent there is a reasonable basis for them to believe they would be building a case of infringement, then... I'm just saying, though, that I'm just telling you my view. At the outset of the case, when you first filed the complaint, I don't think this is even close. There was no jurisdiction then because you did not have a reasonable apprehension of suit at that point. As things progressed through the different iterations of the complaint and the things that happened in the litigation, maybe this case got a little bit stronger. But do you see what I'm saying? It just seems odd to me that you could file a case for which there really is no jurisdiction at the outset. But by going through the different litigation steps, you can kind of generate a controversy or evidence of a controversy between you and the adversary. I understand what Your Honor is saying. It's not just a question of timing. It's that you're putting the defendant in a position where he needs to deal with the risk that the case may go forward while arguing that it shouldn't. And so in dealing with the risk that it may go forward, he has to act like a litigant in a case and contest what you're saying. And then if you start using those factual disputes to demonstrate that there really is a controversy, you're making a controversy out of a non-controversy, not just as a matter of timing, but as a function of the progress of the litigation, of the fact of the litigation. So is that an open-ended possibility or are there limits on it? Well, the problem is in the factual situation here, until trademark priority is determined, no defendant who has a junior use of a trademark is going to probably affirmatively say anything about, I'm going to sue you, or I think there's a likelihood of confusion because you don't know who has priority rights. If it turns out, based on the facts of the case, that the plaintiff, the DECA relief plaintiff, does have priority, then that statement could come back to haunt them. And so they're always going to be circumscribed. I'm going to file, I may file a cross-claim in the lawsuit and then you rely on that to demonstrate there's actually a controversy. But if there is a case, then he wants to preserve his right to file a cross-claim. So what is he supposed to do? Not say in the status conference, file a cross-claim and give up his ability to do that in case the judge disagrees and lets the case go forward? No, I mean, I don't think that, I don't think we're asking the other sites to be giving up anything. I think you have to look at the totality of the facts. But you're relying on the fact that they said they may file a cross-claim. That's one of the things you're relying on. That's one of the things. There's others. There's also the fact that we attempted for, at that point, it was a year and a half to get some sort of coexistence agreement. And all we got back was, we're not interested in that. And let's find out all the evidence we would have to potentially build an infringement case. Your fair story on that one is, we weren't interested until we knew enough to know what the agreement would look like. So we need more information. Sure. And that's correct, Your Honor. But again, at this stage in the case, the court is supposed to view it from the plaintiff's lens and determine if there is a reasonable basis that that also might be, maybe they're looking at it to enter in an agreement. Maybe they're looking at it to build a case of infringement. The Ninth Circuit law is that, even if you have circumspect language in a letter, that would be a sufficient basis for a plaintiff, under that circumstance, to believe that the other side was building a case of infringement, such that it would be reasonable to file the DEC relief action. OK. Do you want to reserve some time? I'll reserve my last 42 seconds. Thank you. Good morning, members of the court. My name is Brent Lorimer. I'm here on behalf of Merit Medical Systems, Inc., the appellee in this case. I'd like to first address, if I could, your comment, Judge Watford, about Northstar. Northstar was an interesting case because what factual allegations than those that were in the original complaint, and they occurred between the finding of the original complaint and the supplemental complaint, those could be considered in that case, in the case of standing. There is a fundamental problem with applying Northstar here, and that is that the allegations of case or controversy in the original complaint, the First Amendment complaint, the Second Amendment complaint, and the Third Amendment complaint are identical. There is not one word of all these things that they're alleging now in any of those complaints. So Northstar is just not applicable here at all. Let me ask you something. The one thing, there is, I think, in the complaint, it certainly said, anyway, that at one point, I think it was the president of your client said, we will litigate, or we will charge you with infringement, something like that. No, I think the reference to which the court makes there is an allegation by the plaintiff that I said as counsel in a 26-F conference that we will sue you. Okay. All right. Now, how, and if you said that, would that support the declaratory judgment action? No, Your Honor, there's an interesting case on this issue, and it follows the line of discussion that you were having with Mr. Bleeker. There's a case called International Video v. Ampex. In that case, it was also a declaratory judgment claim, and the defendant in that case said, look, we don't think there's a case of controversy. We really don't think there is. But they filed a motion to dismiss on 12B1, and the court denied it. And so they then actually filed a counterclaim. And they said, look, we don't think there is, but if we don't file this, it's a compulsory counterclaim, and we lose it. I understand the counterclaim part, as I said before, but this wasn't in the context of a counterclaim, was it? Well, Your Honor, you're right. There was no counterclaim filed. But certainly, if the actual filing of a counterclaim isn't sufficient to generate a case of controversy, then the supposed allegation that you may file a counterclaim. But that isn't, I thought, that was one, and I agree with you about that, but I thought he also said, aside from the, I'm going to, may file a counterclaim, that you said, we will sue you for infringement. Well. And I think there was some hypothetical, if you do X. Well, no. And he says that they did do X, X being using, I think, using the name Merit without a logo on some product that you also produce. And I guess there are hypodermic needles where they do use this Merit thing. Your Honor, that refers to the testimony of Mr. Lampropoulos. You're correct. He is the CEO of Merit Medical. I said. And. I think I asked the question correctly the first time, actually. But go ahead. Don't forgive me if I misunderstood, Your Honor. What Mr. Lampropoulos said was that if you use the same mark on the same goods to the same customers, there would be a likelihood of confusion. That is a sort of. No, but there's another sentence where he said, we will sue you for infringement. No, that isn't. That's what they say. I understand you say it didn't happen. And what I was trying to get to is, let's suppose that that's the situation. They say that you said we will sue you for infringement. And you say we never said that. How does that fit procedurally into where we are now? Well, assuming that was said, we deny it. But let's assume that it was. Let's assume. And what I'm trying to get to is, let's assume that he says it was said and you deny it. Then what? If that was said, they admit that that was said, if at all. I want to know if that was said. I want to know if he says it was said and you say it wasn't said. The timing of that is important, Your Honor. I'm sorry? The timing of that is important. The timing is important because even under their view of the facts, that happened about a year or so, a long time after the case was filed. And under the Wilderness Society, the case of controversy has to exist at the time of filing. You can't put the cart before the horse and say, you know, I'm going to gin up this lawsuit, this controversy, after the thing is already filed. And that happened long after the case was filed, if it happened at all. And that isn't... You're not answering my question. Pardon me? You're not going to answer my question. I want to know procedurally. We already have been over the other problem. That is, does North Star, in fact, support the use of something that happened afterwards? Let's assume that for a moment. All right. What I want to know is if there is a factual controversy at this stage of the proceedings, i.e. as to whether there's a declaratory case or controversy, and one of you says X happened and another one says Y happened, and it could be determinative of whether there's a case or controversy. Do we take the plaintiff's version at this stage? Do we ask the judge to... I think what the judge did was essentially resolve the factual dispute. Can he do that? Should he do that? The answer is I believe he did, and yes, he can. I think there's a case that specifically says he can't. Well, in the Safe Air case, Your Honor, and in the Thornhill case, the precedent of this court, it said that on a factual attack, which was made in the district court, that the district court has the power to resolve factual disputes, and it doesn't matter if they're disputes of genuine fact. He can resolve those under a factual attack, which this clearly was. Was this treated that way, i.e. were there declarations and so on? There were declarations by one and all. The plaintiffs submitted several. We submitted several. There were declarations all over the place. Can I ask this? You said a moment ago in response to a question from Judge Berzon that even if you had made the statement that's attributed to you, that that still would not give rise on their part to a reasonable apprehension of suit, and I guess I didn't quite understand how that would be the case, because just looking at Mr... Is it Mr. Daley who gave the declaration? It is. It's not phrased in terms of your statement. What he's attributing to you is not phrased in terms of bringing a compulsory counterclaim per se, right? It's framed more in terms of that your client will bring a suit for trademark infringement. It just seems like if an explicit threat of that nature isn't enough to give them an apprehension of suit, I don't know what would. So I'm a little bit confused as to your position on that. Well, Your Honor, Mr. Daley did say that. I concede that he said it. I don't agree that it's true, but he did say it. I think he mentioned that in connection with the 26F conference. The 26F conference is what gave rise to the attorney's planning meeting, where we said we may file it. We don't know yet. We're working on it. We're trying to figure it out. The interesting thing about all those... Let's take his statement as true for just a moment for purposes of argument. During the course of this litigation, we deposed the president of this company, and we asked him in very simple terms, Mr. Farha, did Merritt Pharmaceutical ever believe that Merritt Medical was going to sue it for trademark infringement? And he said, no, twice in a row. This is ginning up a controversy to satisfy it after the fact. I know, but... And the judge resolved that. Well, no, the judge did not resolve who was telling the truth. On that issue, that exact issue. That's why I'm saying, if we were forced to come to ground on this particular factual dispute, because if we believed their version, then there would be jurisdiction, but if we believe your all's version, then there wouldn't. It seems to me the right, from a procedural standpoint, the right thing to do would be to vacate, send it back to the district court and have the district court make an explicit factual finding on that point, right? Your Honor, if that were in a complaint anywhere, maybe. It's not. I mean, even under the... They argue this is facial, it's really factual, but it was not in the complaint, nowhere. And under North Star requires a supplemental complaint. Either this is a facial determination or it's a factual one. You said it was factual. If it's factual, it doesn't have to be in the complaint, as long as it's consistent with the complaint. If they are spinning out particulars in their declarations or depositions, they can rely on it. And that's what happened. So what's the difference does it make that it wasn't in the complaint? Well, they say that the North Star, they argue that the North Star case says you can argue stuff that happened after the finding of the original complaint. North Star said that's true if you have a supplemental complaint that has new facts in it. They don't. That's my only point. Can I ask a more generic question and then you're out of time? Yes, ma'am. I will admit that I am new to this particular area, i.e., how does declaratory judgment work in a purported private controversy for trademark. But more generally, as I understand declaratory judgment law, and maybe it's the difference between a government dispute with the government and dispute with private parties, it was a surprise to me that one has to have anything as definite in terms of a likely lawsuit as what you're suggesting. I mean, I can think of many instances, and I thought that the metamune case kind of says you don't. There are many instances in which declaratory judgments are brought in the category of I want to do X and I have reason to believe. I'm afraid that if I do X, there's a law that says I can't do X and it has consequences. And instead of violating the law, I'd like to bring a declaratory judgment. And usually you can do that if it's sufficiently believable that you're actually going to do X unless there's some reason to believe that it's unenforced or unenforceable. And this seems to be, in the way you're arguing at least, a much tighter in rule, i.e. even if they say incredibly, I want to continue to sell this stuff, maybe they haven't made the right allegations, but if suppose they said, I want to use this bear trademark without the logo and I'm making some products that are similar to their products and there is at least a non-frivolous case that I'm infringing and I don't want to be liable for gazillions of dollars, I'd like to know whether I am or not. Where were you getting the rule that there has to be an actual threat to sue them? Well, I mean, my time's up. Yes, I know. That's why if I asked you a question, I certainly want the answer rather than have you sit down. Thank you. Thank you, Your Honor. The rule from MedImmune is that you have to have a definite and concrete controversy. But not that you have to have an actual threat to sue. No, that's evidence. That can be evidence, but you don't actually have to threaten. No, that was the standard in the Federal Circuit before MedImmune. That's what the Federal Circuit overturned. They said, excuse me, what the Supreme Court overturned. They said you've got to have a reasonable apprehension of liability, a real and reasonable apprehension. And you seem to be trying to go back to the old version. I don't believe I am, Your Honor. Well, this entire case was argued on the basis of whether there was or was not a reasonable apprehension of suit. I think there were allegations that we threatened that. We argued it, Your Honor, based on a real and reasonable apprehension of liability. We don't think there was. The district court's opinion did seem to talk about the totality of circumstances. So it seemed to me that the district court recognized at least that MedImmune suggested a lessening of the burden. I agree, Your Honor. But the district court seemed to take that into account in its ruling. Under all the circumstances, I think, were his words. Okay. Thank you very much. You may have a minute or whatever time you have. Thank you, Your Honor. I think it's important to realize the context that the case or controversial issue was first raised. At the beginning of the case, they took the position subject matter jurisdiction was proper. That's in the Rule 26F report. It was only after filing the second amended complaint that they raised this issue. We are also deciding whether or not there was a fraud claim. And so we asked the court to file a third amended complaint to address the fraud issue. The court permitted that. And their original motion to dismiss, based on lack of case or controversy, was denied as moot. So the first time that this was actually addressed by the court was with respect to the third amended complaint. And so we both relied on allegations in that complaint. And we provided affidavits. And under the Rhodes case, if there's not an evidentiary hearing, the court may consider affidavits or declarations. It may consider other evidence. And it doesn't have to weigh it. It doesn't have to make a factual determination. The Rhodes case says where there's no evidentiary hearing, we must accept the plaintiff's version of events as true for the purposes of establishing jurisdiction and surviving a 12B1 motion. So just because the court considered other facts not in the complaint doesn't mean that there was necessarily a factual finding. I'd also like to point out that with respect to Mr. Lampropos' testimony during the course of the case, he did testify that in his opinion, if the word merit alone was on a product and that product was offered for sale or sold to one of his customers, he would consider that to be a big deal. And from our client's perspective, that's exactly what they are doing. They were using just merit on a syringe, which is the same type of products. They were alleged they were selling to their clients, though. I'm sorry? Did you ever allege that they were selling or wanted to sell to their clients? I don't recall if we alleged that. But I mean, the issue from the plaintiff's perspective is they're a giant company who have tons of customers. We don't know who their customers are from time to time. And so the risk was that at some point in time, our client would then, knowing this risk existed, you know, unknowingly sell one of their products to one of their clients. And at that point, they'd go to Utah and file their lawsuit, and then we'd be stuck. And so that risk was out there. At the same time, throughout all of this… Lawsuit in Utah, you're stuck with the past liability. You're stuck with liability for a longer period of time. Is that your problem? Well, you're stuck with potential liability, but it's also that that's hanging over you the whole time you're doing business. Because remember, the whole time, they're not agreeing that we have priority. They're not agreeing to a coexistence agreement. They're denying all those things. So there's this threat hanging over the business throughout this. And so I guess the other point I would make is to the extent there was a conversation made during the Rule 26F conference, lots of times settlement is discussed, lots of issues are discussed during Rule 26F conference. The Rose case finds that statements made during a settlement conference of threatening infringement, it's proper to consider that in determining whether there's a case of controversy. So, you know, to Judge Watford's point, to the extent, you know, it may seem odd that you file a complaint, and then there's additional facts as a result of the complaint. Well, there is Ninth Circuit law that supports that if there are threats made in the course of litigation or the threat of litigation, that it is proper to consider that from the, because you're looking at the plaintiff's views as a possible risk. Okay, your time is up. Thank you very much. The case of Merit Healthcare versus Merit Medical Systems is submitted.
judges: Berzon, Watford, Linn